# CILENTI & COOPER, PLLC
ATTORNEYS AT LAW
200 Park Avenue – 17th Floor
New York, New York 10166
____
Telephone (212) 209-3933
Facsimile (212) 209-7102

December 15, 2021

**BY ECF**

Hon. Katharine H. Parker, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    *Re:* *Tello v. Nichl Due, Inc., et al.*
       <u>Case No. 21-CV-5852 (KHP)</u>

Dear Judge Parker,

  We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with counsel for the defendants seeking the Court's approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

### I. *The Need for the Court's Approval of the Agreement*

  As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.,* No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II. Plaintiff's Claim for Unpaid Wages and Supporting Allegations

Defendant Nichl Due Inc. is a restaurant doing business as "Polpette 71," located at 71 West 71st Street in Manhattan (the "Restaurant"). Plaintiff, Fabian Tello, is a former employee of the Restaurant who was hired in or about 1998 to work as a waiter. Mr. Tello's employment ended in or about December 2020.

Although his work hours fluctuated slightly each week depending on the number of shifts he worked, Mr. Tello alleges that he typically worked six (6) days per week, and his work schedule consisted of seven and one-half (7½) hours per day on Tuesday, Wednesday, Thursday, and Sunday from 4:00 p.m. until 11:30 p.m.; and eight and one-half (8½) hours per day on Friday and Saturday from 4:00 p.m. until 12:30 a.m., thereby working approximately forty-seven (47) hours per week. Plaintiff alleges he was not required to punch a time clock at the beginning and end of his work shift.

According to Mr. Tello, he was paid on a salary basis at the rate of $120 per week from July 2015 through in or about May 2017, and $140 per week from in or about June 2017 through the remainder of his employment.[1] Plaintiff was paid in cash until in or about May 2017. Thereafter, the defendants paid plaintiff his wages by check.

Based on the foregoing allegations, plaintiff estimated that he is owed approximately $139,000 in underlying unpaid minimum wages and overtime compensation, with an equal amount in liquidated.

## III. Plaintiff's Alleged Facts Contested by the Defendants

It is defendants' position that plaintiff's allegations regarding his weekly hours worked and wages earned are incorrect. According to the defendants, plaintiff regularly worked approximately thirty-six (36) hours per week and therefore did not work overtime. Defendants maintain that plaintiff also mischaracterizes and understates his wages earned. While plaintiff is correct that his net wages were approximately $140 per week for a portion of the relevant time period, he conveniently omits that his net pay is calculated after applying standard deductions and withholdings to his wages for tax purposes. Therefore, each pay period during the relevant time period in which plaintiff alleges he earned $140 per week, he actually earned approximately $200 in weekly gross wages.

However, despite the above and despite defendants' calculation of potential liability being significantly lower than what plaintiff believes he is owed, defendants do acknowledge that the outcome of this matter at trial would be uncertain given the parties' differing positions. Therefore, to avoid the significant legal fees associated with litigating this matter through trial, defendants offered to settle this matter for $110,000.

---

[1] The six (6) year limitations period associated with plaintiff's claims begins in July 2015.

### IV.     The Settlement

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $110,000 to resolve all of plaintiff's wage and hour claims against the defendants, with $30,000 payable within thirty (30) days of the Court's approval of the Agreement and dismissal of the case with prejudice, and the remaining $80,000 payable over sixteen (16) consecutive and equal monthly payments of $5,000 each.

### V.     The Agreement is Fair and Reasonable

We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiff's claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.,* 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.,* No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as during mediation before an experienced mediator appointed by the SDNY. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

Moreover, another concern tending toward settlement was plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. Defendants operate a small neighborhood restaurant with limited financial resources that has been severely impacted by the Covid-19 pandemic, which would only be further damaged by protracted litigation thereby creating further risk to plaintiff.

In light of the various disputes concerning plaintiff's claims, as well the risk of ongoing litigation, this settlement should be approved. By settling now, plaintiff receives a significant portion of his alleged unpaid wages even after attorneys' fees and costs are deducted, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff during mediation, he made the decision to accept the defendants'

offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

### VI. Application for Attorneys' Fees

Pursuant to this firm's retainer agreement with plaintiff, our firm seeks retain one-third of the net proceeds of the settlement after expenses are deducted.[2] Therefore, plaintiff's counsel seeks $36,663 in fees.

Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiffs' counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees. Additionally, as stated above, plaintiff is being made whole even after fees and costs are deducted.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, courts routinely hold that a contingency fee award is presumptively valid where, as here, the proposed fee amount is exactly one-third of the net settlement amount. *See Caceres v. Brentwood Farmers Market*, No. 20 Civ. 3476, 2021 U.S. Dist. LEXIS 147063, at *4-6 (E.D.N.Y. May 4, 2021); *Garcia v. Cloister Apt. Corp.*, 16 Civ. 5542, 2019 U.S. Dist. LEXIS 51887, at *9-10 (S.D.N.Y. Mar. 27, 2019). Here, plaintiff agreed to a one-third contingency retainer agreement with counsel in connection with his wage-and-hour claims.

For all of the reasons set forth above, the parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal With Prejudice, which is being submitted simultaneously herewith, that expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

Respectfully submitted,

/s/
Justin Cilenti

Enclosures

cc: Ilan Weiser, Esq. (by ECF)

---

[2] The firm has agreed to waive its expenses – totaling $510.

{01058671.DOC.2}